IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KELLY GOODWIN,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., AND SEDGWICK CMS,<br><br>    Defendants. | **MEMORANDUM DECISION GRANTING AMERICAN HONDA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:16-CV-00447-JNP-BCW<br><br>District Judge Jill N. Parrish |

  Before the court are Defendant American Honda Motor Co., Inc.'s ("American Honda") Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Rule 12(b)(3) Motion to Dismiss for Improper Venue. (Docket 15). The court scheduled oral argument on the motion for September 27, 2016; however, counsel for Mr. Goodwin did not appear at the hearing. In light of Mr. Goodwin's counsel's non-appearance, counsel for American Honda indicated it would be amenable to submitting the matter on the briefs. Accordingly, after considering the written submissions, the court issues this Order GRANTING American Honda's Motions to Dismiss.

## INTRODUCTION

  Plaintiff Kelly Goodwin ("Mr. Goodwin") brings claims under the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") against American Honda.[1] (Docket 2). Specifically, Mr. Goodwin alleges disability discrimination, age

---

[1] Mr. Goodwin also brings an Employee Retirement and Security Act ("ERISA") claim against defendant Sedgwick CMS ("Sedgwick"). That claim is not at issue in the present motion to dismiss.

discrimination, and failure to accommodate under the ADA and ADEA. American Honda moves the court to dismiss these claims against it, arguing that aside from Mr. Goodwin's status as a Utah resident, Utah has no connection to this lawsuit. American Honda further argues that all key events, transactions, and decisions pertaining to Mr. Goodwin's claims occurred in Colorado and/or California. Mr. Goodwin responds that American Honda has sufficient contacts with Utah to permit an exercise of general or specific personal jurisdiction and that some of the operative events supporting his claims against American Honda occurred in Utah.

**FACTS**

Taken in the light most favorable to plaintiffs, as they must be at this stage in the litigation, the facts of this case are as follows. American Honda is the North American subsidiary of Honda Motor Co. Ltd., and is headquartered in Torrance, California. American Honda is responsible for the distribution, marketing, and sales of Honda and Acura brand automobiles and Honda power sports products in North America. American Honda does not directly sell its products to consumers; rather, it sells them through independently-owned dealerships or its "distribution network." To manage its operations, American Honda divides the United States into eleven zones. Zones are further divided into districts. American Honda's Zone 10 contains seven districts stretching across ten states, including Colorado, Nevada, Utah, Arizona, New Mexico, Oklahoma, Kansas, Nebraska, Iowa, and West Texas. The Zone 10 office is located in Englewood, Colorado.

Each district is assigned several District Parts and Service Managers ("DPSMs" or individually a "DPSM"), with each DPSM assigned to a specific district within a zone. DPSMs are responsible for improving the performance of the dealers' parts and service operations in

areas such as customer satisfaction, parts and accessory sales, and gross profits. DPSMs are expected to visit each dealer within their assigned district at least monthly and even weekly in most cases. Face-to-face contact with dealership employees and customers is an essential function of the DPSM position. The DPSM job description explicitly states that DPSMs are expected to travel 75% of the time and potential DPSMs are notified that travel and relocation are core components of the position.

Mr. Goodwin was employed by American Honda as a DPSM in the company's Zone 10 Utah/Western Colorado District, reporting to the Zone 10 Office in Englewood, Colorado. The Utah/Western Colorado District included dealerships located in both Utah and Colorado. In mid-2013, American Honda announced a reduction of its Spousal Retiree Health benefit by 50% for associates who did not retire by July 1, 2014. It also introduced a new formula for calculating Lump Sum Retirement amounts that would become effective February 1, 2014. At the time of these announcements, several veteran DPSMs retired within a few months of each other and American Honda's management decided to reorganize its districts. Mr. Goodwin was notified that he would be transferred from the Utah/Western Colorado District to the Denver District. The Denver District included dealers located mainly in the Denver metropolitan area and some others within Colorado. Mr. Goodwin expressed his desire to remain in Salt Lake City because he was only two-and-a-half years from retirement, but was told that was "not an option." Mr. Goodwin was upset at this decision because he and his wife were still mourning the death of their son and his gravesite was located in Salt Lake City. Nevertheless, Mr. Goodwin agreed to the transfer. Many other DPSMs that were close to or the same age as Mr. Goodwin were also transferred to other districts; however, younger, similarly situated employees were not required to transfer.

Mr. Goodwin began working in the Denver District in April 2014. Because he had not yet relocated to Colorado, Mr. Goodwin was staying in a motel in Denver during the week in order to perform his job duties and would commute back to his Salt Lake City home on the weekends. On May 13, 2014, during a dealer visit in Westminster, Colorado, Mr. Goodwin began experiencing chest pains and numbness in his extremities. Mr. Goodwin returned to the Zone 10 office where his conditions worsened. The Zone Manager and Assistant Zone Manager took Mr. Goodwin to the Emergency Room where he was eventually diagnosed as having a panic attack. The next day, Mr. Goodwin drove from Denver to Salt Lake City so he could get an appointment with his primary care physician. On May 16, Mr. Goodwin met with a licensed clinical social worker (LCSW) who diagnosed him as suffering from an adjustment disorder with anxiety prevalence as well as some bereavement issues. He then met with his primary care physician on May 20, and was diagnosed as suffering from severe depression and severe general anxiety disorder. Mr. Goodwin's doctor excused him from work until June 23, 2014, so he could receive additional treatment. American Honda allowed for Mr. Goodwin to take a leave of absence based on his doctor's recommendation.

Throughout the rest of May and much of June, Mr. Goodwin had multiple counseling sessions with a LCSW, was examined by a psychiatrist, and again met with his primary care physician to review the results of the counseling and psychiatric examination. Mr. Goodwin's doctor extended his release from work to August 11, 2014, but recommended a work-from-home plan for Mr. Goodwin. Mr. Goodwin requested that American Honda accommodate the doctor-approved plan to work from home, but American Honda declined to allow Mr. Goodwin to resume working—whether from home or otherwise—and instead allowed him to continue his

medical leave of absence. After being denied short-term disability benefits, Mr. Goodwin decided to travel to Denver on July 28, 2014, to see whether the medication his doctor prescribed would control his anxiety and allow him to return to work. Within 24 hours of returning to Denver to work, Mr. Goodwin again began experiencing chest pains and returned to Salt Lake City.

After Mr. Goodwin returned, his doctor decided to change his prescribed medication and extended his medical leave of absence from work through September 1, 2014 so he could evaluate the effectiveness of the new medication. American Honda allowed Mr. Goodwin's leave of absence to continue as recommended by Mr. Goodwin's doctor. On August 7, 2014, Mr. Goodwin again informally requested American Honda to accommodate a work-from-home plan where he would cover the Denver dealerships from his home office in Salt Lake City, or that he be reassigned to Salt Lake City. American Honda did not approve his informal request, but instead asked him to fill out paperwork to formally request accommodation. Mr. Goodwin submitted his formal request for accommodation on August 20, 2014.

Mr. Goodwin then decided to return to Denver to see how he would handle work on his new medication. Mr. Goodwin travelled to Denver to work from August 25–27. On this trip, he experienced less chest pain, but an increase in numbness in his arms and shoulders. He returned home and met with his doctor on August 29. Mr. Goodwin's doctor determined that he had reached "maximum medical improvement" and approved Mr. Goodwin's return to work on September 2, 2014; however, Mr. Goodwin's doctor recommended that he work from Salt Lake City due to the worsening of symptoms he experienced when he was in Denver.

In response to Mr. Goodwin's August 20 formal request for accommodation, American Honda notified Mr. Goodwin that they would allow him to take an unpaid medical leave until such time as a position would become available in Salt Lake City. Due to the uncertainty of when such a position would be available, Mr. Goodwin unilaterally decided to resume his duties with the Denver district on September 2. That day, Mr. Goodwin made phone and e-mail contacts with his assigned dealers in Denver from his home office. The next day, American Honda contacted Mr. Goodwin and ordered him not to have any further contact with his assigned Denver dealers and informed him that, if he did, his employment would be terminated.

Mr. Goodwin left a message on the American Honda Corporate Ethics complaint line on October 1, 2014. That same day, he also submitted an e-mail to American Honda's Corporate Ethics office detailing the events of the prior few months, and proceeded to file an EEO Complaint with the Phoenix, Arizona field office of the EEOC.

Fearing that he would be considered to have voluntarily terminated his employment with American Honda by not returning to work after a medical leave of absence, Mr. Goodwin again unilaterally decided to work from his home office and cover his Denver dealerships from there. He then travelled to Denver on October 7 to resume dealer visits and other job duties. Over the next couple of days, Mr. Goodwin made dealer visits around the Denver area. On October 9, Mr. Goodwin visited the Zone Office to pick up mail and deliver his dealer contact reports. While at the Zone Office, Mr. Goodwin had a conversation with the Assistant Zone Manager, Jim Witzel, and discussed his medical condition and return to work. The next day, Mr. Goodwin was contacted via conference call by Senior Manager of Parts and Service Operations, Bryan Morris, and Catherine Petrillo from American Honda's human resources department. Mr. Morris and Ms.

Petrillo informed Mr. Goodwin that his employment would be terminated effective October 11, 2014, because of his continued contact with his previously assigned dealers despite instructions not to contact them. Mr. Goodwin filed the present case on May 26, 2016.

## ANALYSIS

### I. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

In evaluating a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings . . . and affidavits, that burden can be met by a prima facie showing." *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011) (*quoting Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1069–70 (10th Cir. 2008)). The court accepts as true "the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations," *Ten Mile Indus. Park v. W. Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir.1987), "to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir. 1990) (*quoting Behagen v. Amateur Basketball Ass'n of the U.S.,* 744 F.2d 731, 733 (10th Cir. 1984)). Once a prima facie case is made, the burden shifts to the party challenging personal jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159 (10th Cir. 2010) (*quoting Dudnikov*, 514 F.3d at 1080). "[I]n the absence of a full evidentiary hearing, a district court relying on documentary evidence in its consideration of a motion to dismiss may not weigh the factual evidence." *Ten Mile Indus. Park,* 810 F.2d at 1524.

The parties agree on the test for evaluating personal jurisdiction. To determine whether it has personal jurisdiction over American Honda, the court first looks to whether exercising personal jurisdiction satisfies Utah's long-arm statute, and second, whether exercising personal jurisdiction comports with principles of constitutional due process. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Because Utah's long-arm statute is co-extensive with the limits of due process, fulfilling the due process requirement also will satisfy the long-arm statute's requirements. *See* Utah Code §§ 78B-3-205 and 78B-3-201 (stating that Utah's long-arm provision extends "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution"). Under Tenth Circuit law, where "the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry." *Shrader*, 633 F.3d at 1239. Thus, "any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII Megadiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979). As explained below, because American Honda's contacts with Utah are not continuous and systematic, and because all of American Honda's suit-related activity occurred

outside of Utah, the court concludes that American Honda lacks the necessary minimum contacts with Utah to confer personal jurisdiction.

    A.    Minimum Contacts

The requirement that the defendant have minimum contacts with the forum state can be satisfied under either a general or a specific jurisdiction theory. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090–91 (10th Cir. 1998). American Honda's contacts with Utah are insufficient under either theory to allow the court to exercise personal jurisdiction over it.

    1)    General Personal Jurisdiction

A court can maintain general personal jurisdiction over a defendant "based on the defendant's general business contacts with the forum state" if those contacts are "continuous and systematic." *Id.* at 1091 (internal quotation and citations omitted). But the inquiry is not only "whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) (citation omitted).

American Honda argues that Mr. Goodwin's complaint does not allege any facts showing any substantial and continuous local activity by American Honda in Utah. American Honda points to the declaration of its Assistant Vice-President over Parts and Service, Bryan Morris, to show that American Honda does not own any property in Utah, does not maintain an office in Utah, does not have a mailing address or phone number in Utah, does not conduct operations in Utah, does not have a Utah bank account, makes only .0058 percent of its total sales in Utah, and does not own any entity that distributes products in Utah. Indeed, American Honda argues that

9

whatever contacts it has with Utah, including having a few Utah employees who work with independent automobile dealers in the state, are "de minimis" and inadequate to support general jurisdiction.

Mr. Goodwin responds with a declaration of his own regarding American Honda's contacts with the Utah forum. Mr. Goodwin asserts that American Honda conducts substantial and continuous local activity in Utah that would subject it to general jurisdiction. First, Mr. Goodwin points to American Honda's advertising of its products and brand in Utah. Second, Mr. Goodwin discusses the 2015 sales of automobiles to independent dealers in Utah. He states that between automobile sales and parts and accessories sales to its independent dealers, American Honda sold hundreds of millions of dollars' worth of Honda products in Utah in 2015.

American Honda argues that the court should not consider any of Mr. Goodwin's allegations regarding sales in 2015 because they are not based on his personal knowledge, as required by Rule 602 of the Federal Rules of Evidence. But even if the court were to consider Mr. Goodwin's allegations regarding American Honda's 2015 Utah sales, the court disagrees that such contacts would be sufficiently continuous and systematic as to give rise to general jurisdiction.

American Honda's placement of its products into the stream of commerce, even if it results in sales to Utah residents, is irrelevant to a general personal jurisdiction analysis. The Supreme Court has instructed,

> Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific jurisdiction* . . . . But ties serving to bolster the exercise of *specific jurisdiction* do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant . . . . A corporation's "continuous activity of some sorts within a

state," *International Shoe* instructed, "is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (emphasis added) (citations omitted). The Supreme Court was conscientious of the fact that if contacts such as American Honda's sales to its independent dealers could give rise to general jurisdiction, "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed" —a result not in conformity with the limiting principles of due process *Id.* at 929.

This position is further buttressed by the Supreme Court's recent decision in *Daimler*. In *Daimler*, defendant Daimler, the manufacturer of Mercedes-Benz vehicles that distributed its products through independent dealerships across the country sought dismissal of the case against it for lack of personal jurisdiction in California. 134 S.Ct. 746, 752 (2014). Daimler and its indirect subsidiary, MBUSA, were not incorporated or otherwise organized in California and had principal places of business in Germany and New Jersey, respectively. *Id.* But MBUSA did have multiple California-based facilities, including a regional office. *Id.* Plaintiffs argued that this presence, as well as Daimler/MBUSA's sales in California—which accounted for 2.4% of Daimler's worldwide sales—qualified as "continuous and systematic" contacts that justified an exercise of general personal jurisdiction over Daimler in California. *Id.* The Court disagreed:

> "If Daimler's California [sales] sufficed to allow [general jurisdiction in this case], the same global reach would presumably be available in every other State in which [Daimler's] sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"

11

*Id.* at 761–62 (*quoting Burger King Corp.*, 471 U.S. at 472). The Court held it was error to conclude that Daimler's California contacts were continuous and systematic enough as to render it at home in California. *Id.* at 762.

American Honda's contacts with Utah are even less continuous and systematic that Daimler's were with California. American Honda has no alleged presence in Utah outside of its product sales. And even then, those sales account for a smaller percentage of American Honda's overall sales than Daimler's California sales did in *Daimler*.

Furthermore, American Honda's nation-wide advertising, even though it reaches Utah residents, cannot by itself or in combination with American Honda's Utah sales give rise to general personal jurisdiction in this case. The Tenth Circuit has held that mere placement of national advertisements "does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994).

Based on the foregoing, American Honda's contacts are not "so continuous and systematic as to render [it] essentially at home in [Utah]." Accordingly, Mr. Goodwin has failed to meet his burden to make a prima facie showing of general personal jurisdiction over American Honda.

      2)     Specific Personal Jurisdiction

A court can maintain specific personal jurisdiction over a defendant if (1) "the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there," and (2) the exercise of personal jurisdiction over the defendant is reasonable

and does not offend "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091 (internal quotations and citations omitted).

The minimum contacts requirement is met when the plaintiff can show that (i) the defendant purposefully directed its activities at residents of the forum, and (ii) the claims arise out of or result from those actions. *Id.* The Supreme Court recently clarified that the minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation and citation omitted)). In order to not offend due process, "the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Id.* at 1122 (emphasis added). This is a "defendant-focused" inquiry—the minimum contacts test cannot be satisfied by demonstrating contacts between the plaintiff and the forum, and attempts to do so have been consistently rejected. *Id.* (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Indeed, "however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (*quoting Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Finally, the Supreme Court reiterated that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

In its memorandum in support of its motion to dismiss, American Honda does not contest the fact that it has minimum contacts with Utah. Rather, it argues that Mr. Goodwin's claims do not arise out of or result from those contacts. Specifically, it argues that its suit-related conduct— including its policy change decisions, and all other decisions it made with regard to Mr. Goodwin's transfer, employment, accommodation requests, and discharge—did not occur in

Utah. Any and all decisions relevant to Mr. Goodwin's ADA and ADEA claims were made in either Colorado, where the Zone 10 office is located, or in California, where its Torrance headquarters are located. Because none of the decisions impacting Mr. Goodwin were made in Utah, American Honda argues that there is no connection between American Honda's contacts with Utah and Mr. Goodwin's ADA claims. American Honda further argues that Mr. Goodwin's ADEA claims do not arise from its contacts with Utah, again because the challenged actions and decisions were taken and made in Colorado and California.

      Mr. Goodwin responds, pointing to his own affidavit, that "[m]any of the core events" generating his claims occurred in Utah. Specifically, Mr. Goodwin argues that during the times in question, he resided in Utah, performed work for American Honda out of his home office in Utah, travelled to work from Utah, fashioned his requests for accommodation in Utah, was treated for his medical issues in Utah, and asked for an accommodation from American Honda to work from Utah. But all of Mr. Goodwin's arguments and allegations focus on Mr. Goodwin's own contacts with Utah, not American Honda's. Although the decisions American Honda made with regard to Mr. Goodwin's employment affected someone living in Utah, all of those decisions were made wholly outside of Utah and cannot provide the basis for personal jurisdiction over American Honda. *See Walden*, 134 S.Ct. at 1121–22.

      Mr. Goodwin's complaint alleges that American Honda has the following contacts with Utah: first, American Honda "is an employer . . . which does business in the State of Utah" and second, American Honda made the decision to transfer Mr. Goodwin from a position in Salt Lake City, Utah to a position in Denver, Colorado. But even though American Honda has these basic contacts with the forum, the claims in this case did not arise out of or result from those contacts.

14

The only operative facts in this case that occurred in Utah occurred in Utah only because of Mr. Goodwin's actions, not American Honda's. American Honda's conduct may support a substantial connection with Mr. Goodwin, a Utah resident, but there is no substantial connection to Utah itself. *See id.* Mr. Goodwin fails to allege contacts by American Honda to support a prima facie showing of a substantial connection to the Utah forum.[2] Because American Honda's suit-related activity all occurred outside of Utah, it does not create the necessary "substantial connection" with Utah that would allow the court to exercise specific personal jurisdiction over it.

## II. The Court Requests Briefing From Mr. Goodwin Stating His Position On Either Dismissal Or Transfer Of The Claims Against American Honda

Having determined that it lacks personal jurisdiction over American Honda in this case, the court must decide whether to dismiss this case without prejudice or transfer it to another jurisdiction. 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."). The Tenth Circuit has "directed that, after the enactment of § 1631, where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, '[t]he correct course . . . [is] to transfer the action pursuant to [§ 1631]." *Id.* (*quoting Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987)).

The matter of dismissal or transfer is somewhat complicated by the fact that another defendant, Sedgwick, has filed its answer to Mr. Goodwin's claim. There has been no challenge to this court's jurisdiction to hear Mr. Goodwin's claim against Sedgwick and it is unclear

---

[2] As the court noted in its general jurisdiction analysis, Mr. Goodwin also alleges that American Honda has contacts with Utah in the form of sales to independent dealers in the state. Although these sales would be relevant if Mr. Goodwin's claims arose out of them, they are irrelevant here where they did not give rise to Mr. Goodwin's claims.

whether the courts that may have jurisdiction over American Honda would also have jurisdiction over Sedgwick. Having determined that it does not have personal jurisdiction over American Honda, one possibility may be to sever the claims against American Honda and transfer them to a forum where those claims "could have been brought," while proceeding with Mr. Goodwin's claim against Sedgwick. *See* Fed. R. Civ. P. 21. But the parties have not briefed whether such an approach is a legitimate one. And the court recognizes that it may be more convenient for the parties to litigate all the claims together in a single action. Accordingly, the propriety and desirability of severing the claims against the various defendants is in question.

In light of these issues, the court ORDERS that Mr. Goodwin, within ten (10) days of the filing of this Order, submit a memorandum addressing the following: (i) whether the court should dismiss the claims against American Honda or transfer them to another court; (ii) if the court transfers the claims against American Honda, whether they should be transferred to either California or Colorado; and (iii) whether Mr. Goodwin's claim against Sedgwick should be severed and proceed in this court or whether it should be transferred or dismissed along with the claims against American Honda.

After the filing of Mr. Goodwin's memorandum on these issues, defendants American Honda and Sedgwick will have the opportunity to respond. Defendants are requested to file their responses, if any, within ten (10) days of the filing of Mr. Goodwin's memorandum.

## CONCLUSION

Because the court cannot exercise either general or personal jurisdiction over American Honda, its Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. American Honda's Motion to Dismiss for Improper Venue is DENIED as MOOT. Mr. Goodwin is

HEREBY ORDERED to submit briefing on the transfer and severability issues described above within ten (10) days of the issuance of this Order.

Signed October 14, 2016.

        BY THE COURT

        _____
        Jill N. Parrish
        United States District Court Judge